IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2020

**DERRICK D. CARR v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County**
**No. 13-CR-651       Brody N. Kane, Judge**

_____

**No. M2019-00201-CCA-R3-PC**

_____

Petitioner, Derrick D. Carr, was indicted by a Wilson County grand jury for two counts of first-degree murder, one count of attempted first-degree murder, one count of especially aggravated robbery, and two counts of reckless endangerment involving a deadly weapon. Pursuant to a negotiated plea agreement, Petitioner pled guilty to second-degree murder and attempted first-degree murder and received concurrent twenty-five-year prison sentences. Petitioner subsequently filed a timely pro se petition for post-conviction relief claiming that he had received ineffective assistance of counsel and that he had newly discovered evidence from one of the victims. After an evidentiary hearing, the post-conviction court denied the petition. After a careful review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jay Umerley (on appeal), Laural Hemenway (at post-conviction hearing) Nashville, Tennessee, for the appellant, Derrick D. Carr.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Justin Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

Petitioner was indicted by a Wilson County grand jury on August 13, 2013, for one count of premeditated first-degree murder, one count of felony first-degree murder, one count of attempted first-degree murder, one count of especially aggravated robbery and two counts of reckless endangerment that involved a deadly weapon.

At the August 20, 2015 plea hearing, the State relayed the following facts of the case.  On August 10, 2013, Petitioner along with co-defendant, Shawn Betty, went around the back of a house where Justin Johnson, Lereco Abston, Andre Logue, Maurice Ward, and Darryl Wallace were playing dice.  Petitioner and Mr. Betty demanded money from the people playing dice and pulled their weapons as they made the demand.  The pair fired the weapons, hitting Mr. Johnson multiple times, and Mr. Logue one time with gun fire.  Mr. Logue was pronounced dead at the scene.  Mr. Johnson was taken to the hospital and survived his injuries.

Lebanon Police Department officers arrived at the scene.  They collected evidence that included bullet fragments and cartridges from .45 caliber ammunition and 9 millimeter ammunition.  The other dice game attendees gave statements to the officers.

Mr. Johnson told police that he met Petitioner previously and that Petitioner was the one that shot him.  Mr. Johnson identified Mr. Betty from a photographic lineup.  Mr. Johnson stated that Petitioner and Mr. Betty were together when they came around the house shooting.  During surgery, Mr. Johnson had a .45 caliber round removed from his shoulder, and a 9 millimeter round removed from his leg.  Mr. Ward also told police that he knew Petitioner and Mr. Betty and that they were the ones that did the shooting.  Mr. Wallace and Mr. Abston both told police that they saw the weapons and ran but they could not identify Petitioner or Mr. Betty.

Cecilia Beasley told police that she was asleep inside the house when she heard the shooting.  She looked out the window and saw Petitioner get into a vehicle with another person that she did not know.  Ms. Beasley recognized Petitioner because she had met him before.  Based on the witness statements, an indictment was obtained against Petitioner and Mr. Betty.

Police found Mr. Betty's and Petitioner's wallets at a home on Toshiba Drive fifteen days after the shooting.  The State claimed they would have argued that Petitioner and Mr. Betty intentionally left their wallets behind to "get rid of their identifying information in case they were pulled over."  Petitioner and Mr. Betty were pulled over by police in Farmington Hills, Michigan nineteen days after the shooting.  During the stop, the pair gave officers false names.  The officers properly identified Petitioner and Mr.

Betty and took them into custody. Petitioner agreed with the facts of the case as presented by the State.

Petitioner told the trial court that he understood he had the right to plead not guilty, that the State would have to present evidence to a jury and had the burden of proving Petitioner's guilt, and that the jury would decide if Petitioner was guilty or not guilty. Petitioner agreed to waive his rights and enter a guilty plea.

Petitioner agreed that he had been effectively represented by trial counsel and that there was nothing trial counsel had failed to do given the facts of the case. Petitioner was not under the influence of any drugs or alcohol. Petitioner was not threatened or coerced into pleading guilty. Petitioner agreed that it was solely his decision to plead guilty. Petitioner agreed that trial counsel had met with him on several occasions and answered any questions that Petitioner had prior to the hearing. Petitioner agreed that he was pleading guilty against the advice of his family members. Petitioner agreed that trial counsel told him that he had a chance of winning the case and what the outcomes would be if the State won the case.

Petitioner pled guilty to second-degree murder and attempted first-degree murder. The other counts were dismissed. In exchange, Petitioner received twenty-five-year sentences for each conviction. The sentences were to be served concurrently.

On April 21, 2016, Petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel for Petitioner, and Petitioner filed an amended petition. Petitioner argued that trial counsel failed to provide sufficient counsel for him to fully understand the nature and consequences of trial and sentencing hearing decisions. Petitioner claimed that trial counsel failed to inform the court of a conflict of interest, and that trial counsel failed to advise Petitioner he could not be sentenced to the maximum sentence within the range of his convictions absent proof of enhancement factors. Petitioner further argued that his sentences were illegal, that new evidence from Mr. Johnson surfaced which refuted the factual basis for Petitioner's plea, and that certain individuals in the court room during his plea made Petitioner fear the consequences for him and his family if he did not plead guilty. Finally, Petitioner argued that the cumulative effect of these arguments served as grounds for relief.

On September 28, 2018, the post-conviction court held an evidentiary hearing. Mr. Johnson testified that the shooting happened differently than the facts that Petitioner had agreed to at the plea hearing. Mr. Johnson testified that Petitioner was a participant in the dice game and that he and Petitioner got in a dispute about kissing the dice. Petitioner had kissed the dice, and Mr. Johnson did not like it. Mr. Johnson pulled a gun but Petitioner was able to produce his gun first and shoot Mr. Johnson. Mr. Johnson

stated that trial counsel called him to arrange a meeting prior to the guilty plea but that trial counsel never followed up.

Mr. Johnson admitted that he gave a statement to police the night of the shooting that was different than his testimony at the post-conviction hearing. Mr. Johnson stated that when the shooting happened, all he did "was sell drugs, did drugs, and gambled." He was angry with Petitioner so he told the police a lie to make it look like Petitioner tried to rob him. Since then he had changed his life and wanted to make amends. Mr. Johnson testified that if Petitioner had gone to trial his testimony would have matched the statement he gave the police. On cross-examination, Mr. Johnson agreed that although each of the other witnesses' stories matched the version Mr. Johnson had given to police, his testimony at the post-conviction hearing was the truth.

Petitioner testified that during the dice game, others accused him of cheating. There was an argument that led Mr. Johnson to pull out his gun. Petitioner pulled his gun and shot Mr. Johnson in the leg and ran to his car. As Petitioner ran, he heard other gunshots. When Petitioner arrived at the front of the house, Mr. Betty was getting out of the car. Petitioner told Mr. Betty to get in the car and they drove away.

Petitioner stated that trial counsel rarely visited him due to the long travel time from Nashville. When trial counsel did visit, all he and Petitioner spoke about was a plea deal. Trial counsel did not discuss trial strategy with Petitioner. Trial counsel explained to Petitioner that the plea offer was contingent on both Petitioner and Mr. Betty accepting the offer. Trial counsel told Petitioner that "he could take the twenty-five[-year offer] or either to go trial and more than likely get life." Trial counsel explained to Petitioner that the offer was valid for twenty-four hours.

Petitioner felt that trial counsel was not ready for trial. Petitioner asked trial counsel to interview the witnesses, specifically Mr. Johnson and Mr. Ward, to see if their statements had changed.

On the day of the plea hearing, Petitioner informed trial counsel that he did not want to accept the plea offer because he acted in self-defense and was not guilty. He wanted trial counsel to go to trial. Petitioner felt intimidated by the victim's family and "a couple of dudes that was there that night" who were attending the hearing. Petitioner also felt intimidated by trial counsel because he "put his pen down hard" when it was time for Petitioner to sign the plea agreement. Although Petitioner felt his attorney was "not fighting" for him, ultimately Petitioner agreed to the plea because his "back was against the wall."

Petitioner dismissed the entirety of his plea colloquy testimony. Petitioner claimed that he "was not in a right state of mind" and "was just ready to get it over with." He claimed that he "really wasn't listening to what the [trial court] said." Petitioner wanted trial counsel to come see him more often and discuss trial strategy so that they would "build a better relationship" and so that trial counsel would have "really believed in what [Petitioner] was telling him was going on and that [trial counsel] would have fought for [Petitioner] even harder . . . and take my case more seriously."

Trial counsel testified that he had been a criminal defense attorney for about twenty-five years. Trial counsel visited with Petitioner six to eight times, possibly more, while Petitioner was housed in Davidson County, for an hour or more each visit. Some days he visited Petitioner more than once. Trial counsel met with Petitioner more often when Petitioner was transferred to Wilson County. Trial counsel petitioned the court to appropriate funds for a private investigator and that he ultimately received those funds.

The private investigator met with Petitioner multiple times. The investigator tried to reach out to the witnesses, but had no cooperation from any of them. Trial counsel tried to get assistance from Petitioner's mother to see if she could get some of the witnesses to speak to the investigator. No witnesses would cooperate.

Trial counsel stated that he was unaware of any conflict that he had in Petitioner's case. Trial counsel believed that Petitioner's mother had raised the issue about the possibility that trial counsel represented a relative of one of the victims in this case. Trial counsel did not know who it was.

During plea negotiations, trial counsel recalled that Petitioner wanted a ten-year deal, and the State's best offer initially was thirty years. The parties came to an agreement of twenty-five years about a week prior to the trial date. Petitioner asked a lot of questions and understood the agreement. Trial counsel stated that Petitioner asked about mitigating factors. Trial counsel told Petitioner that mitigating factors only came into play if they had a sentencing hearing and would not come into play in an agreed upon plea.

Trial counsel testified that the problem during negotiations was the six count indictment, particularly the felony murder charge. Trial counsel felt that the State would have a difficult time proving the premeditated first-degree murder charge. He felt if the State could prove the underlying robbery charge, Petitioner was "in a lot of trouble." Trial counsel stated that he told Petitioner that there was a fifty/fifty chance of acquittal. Trial counsel explained to Petitioner that "because of the felony murder, . . . if [the State] could prove robbery, the rest – it all falls into place for the State." Trial counsel told Petitioner that if the State could not prove robbery, Petitioner would "go home." If the

State proved the robbery, he told Petitioner that he would get life in prison. Trial counsel felt he had a winnable case, but it was not a certainty. Trial counsel believed that the fact that Petitioner fled to Michigan and gave a false identity would present a problem for Petitioner at trial. Trial counsel kept Petitioner's files in storage with outlines ready for trial. Trial counsel was prepared to go to trial if that was what Petitioner decided.

Trial counsel was familiar with the witness statements. He knew that each witness had provided "very detailed statements." Trial counsel believed Mr. Ward was a "wild card." Mr. Ward made several statements and had changed his statement a couple of times. Mr. Ward was an FBI informant and trial counsel believed him to be "not a very savory character."

On cross-examination, trial counsel stated that the "whole case was a contradiction from a defense perspective." Because of the contradictions, that is why trial counsel told Petitioner that he thought it was a winnable case. Trial counsel stated that it was "a struggle for [Petitioner]" to decide whether to take the plea offer. Trial counsel stated that "[t]o say there was not evidence to convict [Petitioner], [trial counsel didn't] think that [was] accurate either or certainly we would not have [accepted the plea]." The statement from Mr. Johnson said that Petitioner attempted to rob him. Trial counsel testified that Mr. Johnson's statement was "[p]retty strong evidence and [trial counsel] had [his] work cut out for Mr. Johnson. [Mr. Johnson] wouldn't speak with [the] private investigator. That was a problem." Petitioner never admitted guilt to trial counsel. Petitioner always claimed it was self-defense.

Co-counsel testified and confirmed that he was trial counsel's law partner and that he had agreed to meet with Petitioner and help with jury selection as a favor to trial counsel. Co-counsel was present when trial counsel presented the plea offer to Petitioner. Co-counsel observed trial counsel explain the plea offer, talk about the chances of winning the case, and explain the time Petitioner faced if he did not win at trial. Petitioner did not accept the plea at the meeting, but trial counsel told Petitioner to discuss the plea offer with his family.

At a subsequent meeting, Petitioner indicated to co-counsel and trial counsel that his family did not want him to accept the plea offer but that Petitioner had decided to accept the offer anyway. Petitioner asked questions about the plea offer and trial counsel answered. Co-counsel did not witness Petitioner sign the agreement.

The post-conviction court found that

[t]he essential issue in a [p]etition alleging ineffective assistance of counsel is whether [Petitioner's] attorney's representation fell below an objective

standard of reasonableness for criminal attorneys. The Petitioner has failed to meet his burden of showing that Counsel's representation was performed outside the range of competence and that but for Counsel's mistakes, he would not have pled guilty and instead gone to trial.

The post-conviction court found Petitioner's arguments without merit and dismissed the petition. It is from that dismissal that Petitioner now appeals.

## *Analysis*

Petitioner argues that the trial court erred in determining that trial counsel was not ineffective and that the plea was made voluntarily. The State argues that Petitioner has not shown that trial counsel performed deficiently or prejudicially during plea bargaining. The State argues that the post-conviction court's decision to dismiss the petition should be affirmed. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner

must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel

and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "Before a Tennessee court can accept any guilty plea, the court must determine that the defendant is pleading guilty voluntarily and with an understanding of the nature of the plea and its consequences" and that there is an adequate factual basis for the plea. *Hicks*, 983 S.W.2d 240 at 247. A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Specifically, Petitioner argues that trial counsel did not discuss any trial strategy with him and that "failure to communicate any strategy seems unprofessional and below the standard of reasonableness for a criminal defense attorney." Petitioner argues that but for trial counsel's lack of communication regarding strategy, he would have gone to trial and not pled guilty. Petitioner appears to argue that because Mr. Johnson changed his story, trial counsel was ineffective.[1]

Here, trial counsel met with Petitioner multiple times, twice in the presence of co-counsel. Trial counsel informed Petitioner that the case was winnable and had a fifty/fifty chance of a favorable outcome. Trial counsel stated that he informed Petitioner that the premeditated first-degree murder charge would be difficult for the State to prove but given Mr. Johnson's original statement, it would be difficult to defend the felony murder charge. Trial counsel thoroughly went over the sentencing guidelines and informed Petitioner about sentence exposure if he were convicted at trial. Trial counsel used a private investigator to prepare for trial. He also developed a strategy based on Petitioner's assertion of self-defense and the credibility of the State's witnesses. Petitioner asked questions of trial counsel, and trial counsel obliged Petitioner with an answer to each question. Trial counsel suggested that Petitioner consult with his family while trying to come to his decision to accept the plea offer. In his plea colloquy, Petitioner acknowledged that trial counsel had done everything he needed to do and

---

[1] Petitioner raised additional allegations of ineffective assistance of counsel in his petition for post-conviction relief, but has abandoned those allegations on appeal. *See Jackson v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn Crim. App. Oct. 26, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010). Therefore, we will not address them on appeal.

answered any questions Petitioner had prior to the plea hearing. Petitioner stated that no one had threatened or promised him anything in order for him to plead guilty.

The post-conviction court found that "[trial counsel] did everything required of him in his representation of Petitioner. This [c]ourt cannot make a finding that [trial counsel] failed, in any respect, in his manner of representation." The post-conviction court further found that "[t]his appears to be a case where Petitioner has grown to regret his decision and has resort[ed] to this petition to withdraw his guilty plea." The post-conviction court found that "a review of the guilty plea transcript reveals the decision to plea was his and his alone, and was not the result of coercion or ineffective assistance [of counsel]." The evidence does not preponderate against the findings of the post-conviction court. Petitioner is not entitled to relief.

We discern that Mr. Johnson's testimony at the post-conviction petition evidentiary hearing fails to prove that trial counsel was ineffective. Trial counsel sent an investigator to speak with Mr. Johnson. Mr. Johnson was uncooperative. Further, Mr. Johnson admitted that he would have testified consistent with his original statement to police if this case had gone to trial. The post-conviction court found that "[t]hough [Mr. Johnson's] testimony, if true, [was] concerning to the [c]ourt it does not relate to the issues before the [c]ourt on a post-conviction petition." We agree. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE